## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AHMED ALABBADY, M.D., and DINA HASSEN, a married couple, and A. A., their minor child | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No. |
| v. | : : : | |
| REX W. TILLERSON, United States Secretary of State;  MARCIA PRYCE, Chief, Waiver Review Division, United States Department of State; JOHN F. KELLY, Secretary of Homeland Security; LORI SCIALABBA, Acting Director, U.S. Citizenship and Immigration Services; KATHY A. BARAN, Director, California Service Center, U.S. Citizenship and Immigration Services; and JEFFERSON B. SESSIONS, Attorney General of the United States | : : : : : : : : : : : | ELECTRONICALLY FILED |
| Defendants. | : : : | |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

Plaintiffs by their undersigned lawyer allege as follows:

1.     Plaintiff Ahmed Alabbady, M.D., ("Dr. Alabbady") is a citizen of Egypt.  He is currently a resident of Danville, Pennsylvania.

2.     Plaintiff Dina Hassen ("Ms. Hassen") is a citizen of United States.  She is a resident of Danville, Pennsylvania.  She is married to Dr. Alabbady and resides with him.

3.     Plaintiff A. A. ("A. A.") is a U.S. citizen and the one-year-old son of Dr. Alabbady and Ms. Hassen.

-1-

4.      Defendant Rex W. Tillerson is the United States Secretary of State, the head of the United States Department of State, an agency of the United States.  He is named in his official capacity.

5.      Defendant Marcia Pryce is the Chief of the Waiver Review Division ("WRD") of the Bureau of Consular Affairs of the United States Department of State, an agency of the United States.  This office is responsible for making recommendations on waivers pursuant to 8 U.S.C. § 1182(e).  She is named in her official capacity.

6.      Defendant John F. Kelly is the United States Secretary of Homeland Security, the head of the United States Department of Homeland Security, an agency of the United States.  He is named in his official capacity.

7.      Defendant Lori Scialabba is the Acting Director of the United States Citizenship and Immigration Services ("USCIS"), which is part of the Department of Homeland Security and is an agency of the United States.  She is named in her official capacity.

8.      Defendant Kathy A. Baran is the Director of the USCIS California Service Center, an agency of the United States.  She is named in her official capacity.

9.      Defendant Jefferson B. Sessions is the Attorney General of the United States.  He is named in his official capacity.

## I.  Jurisdiction and Venue

10.      This is an action to review administrative agency action of the U.S. State Department.  The action arises under the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.  Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1361 (mandamus).

This Court may grant relief pursuant to the Act, the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., 28 U.S.C. §§ 1361, and 28 U.S.C. § 1651 (the All Writs Act).

11. Defendants Rex W. Tillerson, Marcia Pryce, John F. Kelly, Lori Scialabba, and Kathy Baran had duties to act in conformity with the statute, the regulations, the legislative history, and international law in adjudicating Dr. Alabbady's J-1 exceptional hardship waiver application.

12. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. §§ 1391(e), because all Plaintiffs reside in the district and the United States is a Defendant.

## II.  Introduction and Legal Background

13. This section of the complaint gives a brief introduction of what happened and what is at stake, then a summary of the legal procedures involved.  Waivers pursuant to 8 U.S.C. § 1182(e) will be called "J-1 waivers."  Exchange visitors in the United States in "J-1" nonimmigrant (temporary) status will be called "J-1s."

14. The State Department issued a Not Favorable recommendation on Dr. Alabbady's application for a waiver of the two-year J-1 foreign residence requirement of 8 U.S.C. § 1182(e) ("the foreign residence requirement").  This will require the USCIS to deny the waiver application.  Dr. Alabbady is a national of Egypt.  Egypt is one of the most violent, dangerous, and unstable countries in the world.  It has been plagued by political, economic, religious, and ethnic violence since January 2011.  The overall environment is unstable given the presence of active Islamist insurgency in northern Sinai and the growth of terrorist presence across Egypt's border with Libya.

–3–

15.     Given the instability in Egypt, Dr. Alabbady's wife and son will face exceptional psychological hardship if Dr. Alabbady is forced to fulfill his two-year foreign residence requirement.  That is true because she will fear for her husband's safety in Egypt.  While hardships to the applicant are not supposed to count in this kind of waiver application, it is indisputable that severe harm to a husband/parent would subject his wife and child to a lifetime of psychological hardships.  In addition to the exceptional risk of psychological hardship Ms. Hassen and A. A. will face, Ms. Hassen's care of her U.S. citizen mother will be disrupted.  Ms. Hassen's mother has been diagnosed with dementia and the applicant is involved in the regular care of her.  Ms. Hassen will also face career disruption if her husband is compelled to fulfill the two-year foreign residence requirement.  The family will also experience exceptional financial hardships.  The chief claim of this action is that the State Department must have abused its discretion, because it could not have come to its negative conclusion through a correct process of reasoned decision-making.

16.     Many foreigners come to the United States as "J-1" exchange visitors ("J-1s"). This is a kind of nonimmigrant (temporary) classification, as set forth in 8 U.S.C. § 1101(a)(15)(J).

17.     Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to the two-year foreign residence requirement:  (1) the J-1 program is funded by the U.S. Government or the J-1's Government; (2) the J-1 is engaged in training that is on the "Skills List" for the home country; or (3) the J-1 is coming to the United States for graduate medical education.  The foreign residence requirement prohibits a J-1 from doing certain things, such as

–4–

applying for permanent resident status (green card), until he has either fulfilled the requirement by spending two years in his home country, or until he has obtained a waiver of the requirement.

18.     Dr. Alabbady can only fulfill the requirement in Egypt.  In particular, 8 U.S.C. § 1182(e) provides that a J-1 subject to the requirement may fulfill it only in his country of "nationality or last residence," and "last residence" has consistently been interpreted by both the USCIS and the State Department to mean a country where the person had the equivalent of permanent resident status as of the time of first admission to the United States in J-1 status.

19.     As described with more specificity below, Dr. Alabbady became subject to the foreign residence requirement because he came to the United States in J-1 status for graduate medical education.  In particular, his program was sponsored by the Educational Commission for Foreign Medical Graduates ("ECFMG").

20.     Under 8 U.S.C. § 1182(e), there are four ways that a J-1 can pursue a waiver of the foreign residence requirement (these are specified below).  The instant action concerns Dr. Alabbady's application for a waiver based on the risk of "exceptional hardships" to his U.S. citizen wife and child.  This kind of waiver application commences with the filing of a DS-3035 data sheet form with the State Department.  This is followed by the main application, which is submitted on Form I-612, with accompanying evidence, to the USCIS California Service Center.

21.     Unlike virtually all other waiver application types in U.S. immigration law, this kind of waiver application is not adjudicated solely by the USCIS.  Instead, the waiver can be granted only if the State Department issues a favorable recommendation.  In this case, the State Department issued a Not Favorable recommendation.  This will require the USCIS to deny the waiver application.

–5–

### III.  Factual Allegations

22.     Dr. Alabbady first entered the United States on his J-1 visa on June 9, 2012, as a nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J) to undertake a residency program in internal medicine at Geisinger Health System in Danville, Pennsylvania, in 2012.

23.     Dr. Alabbady's J-1 visa was sponsored by the Educational Commission for Foreign Medical Graduates ("ECFMG").

24.     Dr. Alabbady has been in valid J-1 status since his admission in said status.  His J-1 status expires on June 30, 2017.

25.     Dr. Alabbady married Ms. Hassen on May 4, 2013.

26.     Ms. Hassen was born on January 4, 1987, in Rhode Island.  Therefore, she is a U.S. citizen by birth.

27.     Dr. Alabbady and Ms. Hassen's son, A. A., was born on January 25, 2016, in Pennsylvania.  Therefore, he is a U.S. citizen by birth.

28.     Dr. Alabbady is completing his residency in internal medicine.  Internists are in short supply in the United States.  The denial of the waiver application will harm many U.S. citizens and is harmful to the U.S. public interest.

### IV.  J-1 Waiver History (Exceptional Hardship Waiver)

29.     All applicants for a J-1 exceptional hardship waiver must fill out an electronic Form DS-3035 on the State Department's website.

30.     After completing the electronic Form DS-3035, the State Department's website generates (1) a "Waiver Review Division Case Number," (2) a "Waiver Review Division Barcode Page," (3) a "Third Party Barcode Page," (4) an electronic DS-3035 in "pdf" format

with the applicant's answers, (5) Supplementary Applicant Information Pages (if necessary), and (6) a "Packet Assembly Checklist" and "Instruction Sheet."

31.     All applicants for a J-1 waiver must receive a WRD Case Number from the State Department, which arrives when the DS-3035 is first submitted online.

32.     All applicants for a J-1 waiver must pay a $120.00 filing fee to the State Department for the DS-3035.  After filing the DS-3035 online, the applicant must send a hardcopy of the form, plus fee, to a State Department lockbox in St. Louis, Missouri.

33.     For exceptional hardship and persecution waiver applications, the main waiver application is filed with the USCIS California Service Center.  The application is filed on Form I-612 with accompanying evidence.

34.     All applicants for a J-1 waiver must also pay a filing fee to the USCIS.  For Dr. Alabbady, this fee was $585.00.

35.     On March 31, 2016, Dr. Alabbady, though counsel, filled out Form DS-3035 on the State Department's website to initiate the application process for a J-1 waiver.

36.     The State Department assigned to Dr. Alabbady's case WRD Case Number 1124389.

37.     The State Department generated a "Waiver Review Division Barcode Page" and a "Third Party Barcode Page" for submission with Dr. Alabbady's waiver application.  Dr. Alabbady, through counsel, paid $120.00 to the State Department via cashier's check dated February 23, 2016.  The State Department Waiver Review Division received Dr. Alabbady's signed DS-3035 on April 20, 2016.

38.     On May 13, 2016, Dr. Alabbady, through counsel, filed his Form I-612 exceptional hardship waiver application with the USCIS California Service Center.  The applicant was assigned USCIS Case Number WAC-16-162-51605.

39.     Dr. Alabbady's I-612 materials included the WRD Case Number as well as his Form DS-3035 and the barcode sheet generated by the State Department.

40.     Dr. Alabbady is statutorily eligible to seek an exceptional hardship waiver because he has two qualifying relatives, both of whom are co-plaintiffs in this action:  his U.S. citizen wife, Ms. Hassen, and his U.S. citizen son, A. A.

41.     As documented in the application, Dr. Alabbady's U.S. citizen wife and child will suffer many exceptional hardships if Dr. Alabbady is required to return to Egypt for the fulfillment of his two-year foreign residence requirement.  Furthermore, the application showed that the care of the applicant's mother-in-law, who has been diagnosed with dementia, will be impacted.

42.     The USCIS requires J-1 hardship waiver applications to be argued in the alternative, explaining the hardships that would be faced by the U.S. citizen or permanent resident spouse and/or children both in the home country and also in the United States if they were to stay behind while the exchange visitor returned alone.  The applicant and her husband systematically explained the hardships their family will face in both travel alternatives.

43.     Dr. Alabbady's exceptional hardship waiver application complied with all statutory and regulatory requirements specified by the Defendants.

44.     On October 20, 2016, Dr. Alabbady's Form I-612 waiver application was reviewed by the Director of the California Service Center, Kathy A. Baran.  Ms. Baran made the

legal determination that Dr. Alabbady's qualifying relatives would suffer exceptional hardships if a waiver was not granted.  This finding is evidenced on a Form I-613 prepared by the USCIS. This is a special, one-page transmittal form, a companion to the I-612, that is endorsed on the top by the USCIS, then placed on top of the application when it is transmitted to the State Department.  The USCIS never creates an I-613 in an I-612 case unless it has determined that the case should be approved.  As indicated on the I-613, prior to Ms. Baran's review, an Adjudications Officer and a Supervisory Adjudications Officer both made the same finding that Dr. Alabbady's qualifying relatives would suffer exceptional hardships without the grant of a waiver.  Thus, the USCIS supported the approval of a waiver for Dr. Alabbady.

45.     The State Department regulation at 22 C.F.R. § 41.63(b)(2)(i) states that the Department of Homeland Security "shall transmit a copy of his [sic] determination together with a summary of the details of the expected hardship . . ." to the State Department.  This is obviously necessary to effectuate the adjudication procedure set forth by 8 U.S.C. § 1182(e).

46.     Without discovery, it is impossible to know whether Defendant John F. Kelly violated his duty under the statute and regulations by not transmitting a sufficient summary of the details of the expected hardships to the State Department.

47.     Without discovery, it is impossible to know whether Defendant John F. Kelly violated his duty under the statute and regulations because the summary of hardships was incomplete, lacking in detail, and otherwise insufficient to convey the depth of the hardships that will be suffered absent a waiver.

48.    Without discovery, it is impossible to know whether Defendants John F. Kelly and Lori Scialabba failed to transmit a complete copy of the I-612 waiver application and all supporting materials to defendants Rex Tillerson and Marcia Pryce.

49.    On or about October 20, 2016, Dr. Alabbady's waiver application was transmitted in unknown form from the USCIS California Service Center to the WRD, with the USCIS seeking the recommendation of the State Department on the waiver application.

50.    On October 26, 2016, the WRD received the Form I-612 waiver application from the USCIS California Service Center.  It is not clear if the entire waiver application was received by the WRD.

51.    On information and belief, Defendants Rex Tillerson and Marcia Pryce failed to receive and/or review the entire I-612 waiver application and all supporting materials prior to issuing their recommendation.

52.    On November 4, 2016, the WRD received something called a Letter of Need.  On information and belief, the WRD requested this document from ECFMG.  This is believed to be a document required by regulation for "ECFMG certification," which is necessary for ECFMG sponsorship, which is necessary for admission to the United States in J-1 status for graduate medical education.  See 22 C.F.R. § 62.27(b)(6).

53.    The substance of the Letter of Need is unknown.

54.    On information and belief, prior to approximately 2010 the State Department did not seek and review Letters of Need in ECFMG-sponsored J-1 hardship waiver cases.

55.    On December 4, 2016, the WRD received something called "Post Input."  On information and belief, the WRD requested this document from a consular post in Egypt.

56.     The substance of the "Post Input" is unknown.

57.     Without discovery, it will be impossible to know the substance of the Letter of
Need and the Post Input received in the instant case.

58.     The WRD uses the bottom portion of Form I-613 to state its position on waiver
applications for transmission to the Department of Homeland Security.  The Form I-613 contains
a box that allows the State Department to explain the basis for a Not Favorable recommendation.

59.     On February 24, 2017, Defendants Rex Tillerson and Marcia Pryce issued a Not
Favorable recommendation and transmitted said recommendation on Form I-613 to Defendant
Kathy A. Baran, Director of the California Service Center.

60.     The State Department did not use the allotted space on the I-613 to explain the
basis of its recommendation.  Historically, the State Department attached a separate sheet, which
stated:  "Pursuant to 22 CRF [sic] 41.63 (b)(2)(ii), the Waiver Review Division has reviewed the
program, policy, and foreign relations aspects of this case and has determined that these
considerations outbalance the Exceptional Hardship claims presented.  Therefore, it is the
recommendation of the Department of State that the foreign residence requirement of INA 212(e)
not be waived."  No such sheet was attached to the I-613 in Dr. Alabbady's case.

61.     The WRD is required by regulation to review the (1) program, (2) policy, and (3)
foreign relations aspects of an I-612 case, make a recommendation, and forward it to the
appropriate office at the USCIS.

62.     The basis of the denial, set forth above, is a facially insufficient reason to issue a
Not Favorable recommendation on a Form-I-612 waiver case under State Department
regulations.

63. The WRD's Not Favorable recommendation does not provide any explanation regarding the basis for the denial and it did not include the attachment set forth above.

64. The WRD's Not Favorable recommendation does not provide any evidence that the WRD balanced the program, policy, and foreign relations considerations against the exceptional hardships in the case.

65. Out of all ECFMG-sponsored J-1 hardship waiver applications filed by this law firm between approximately 2000 and 2011, not one received a Not Favorable recommendation from the State Department.

66. On information and belief, the State Department changed its internal policies and standards in the adjudication of ECFMG-sponsored J-1 hardship waiver cases on or about 2011. But the statute has not changed. The regulations have not changed. And there has been no public announcement of any such change.

67. In the instant case, the State Department did not provide a reasoned analysis indicating that prior policies and standards of adjudication are being deliberately changed, as it is required to do under general principles of administrative agency law. See, e.g., Pennsylvania v. Service Transp. Bd., 290 F.3d 522, 535 (3rd Cir. 2002).

68. The WRD maintains a website outlining the processes and procedures for seeking a J-visa waiver. Its address is: http://travel.state.gov/content/visas/english/study-exchange/ student/residency-waiver.html.

69. The WRD website has a Frequently Asked Questions page that answers the question "Why would a recommendation application be denied by the Waiver Review Division?" The answer states: "Recommendation applications are denied when the reasons given for

requesting the waiver do not outweigh the program and foreign policy considerations of the exchange visitor program.  For this reason, waiver recommendation applications from exchange visitors who received U.S. government funding are generally denied."

70.     The basis of such a denial is facially invalid because the WRD is required to assess the program, policy, and foreign relations aspects of a case under 22 C.F.R. § 41.63. Additionally, Dr. Alabbady's case did not involve U.S. government funding.  His residency program was sponsored by the ECFMG.

71.     The procedures utilized by the WRD for adjudication of J-1 waiver applications have changed over the past several decades.  In particular:

72.     The Form DS-3035 did not exist prior to the late 1990s.

73.     Most J-1 program and waiver matters used to be handled by an agency called the U.S. Information Agency (USIA).  The USIA was abolished in 1999.  At that time, its "program" functions were transferred to the State Department's Office of Academic Exchange Programs, and its "waiver" functions were transferred to the new WRD within the State Department's Bureau of Consular Affairs.  The USIA started charging a filing fee for the Data Sheet form (which later became the DS-3035) in approximately 1998.

74.     J-1 waiver applicants were not required to submit any materials directly to the USIA or State Department prior to sometime in the 1990s.  In earlier times, in cases where the Immigration and Naturalization Service (INS, the predecessor to the USCIS) made a finding of exceptional hardship, the District Director would submit a complete copy of the application materials to the USIA or State Department to obtain that agency's recommendation.  This required no independent action on the part of the applicant.

–13–

75.     Given the issuance of the Not Favorable recommendation of the WRD, the USCIS is statutorily required to deny the waiver application.  See 8 U.S.C. § 1182(e).  Historically, the USCIS has issued denials in cases like this with two main reasons.  The first basis of the denials is that the State Department had issued a Not Favorable recommendation.  This has been done historically by Kathy A. Baran even though the explanation from the State Department comprised a facially invalid explanation for its recommendation.

76.     In another ECFMG-based hardship waiver denial, the second reason given by Kathy A. Baran states:

> In reaching this conclusion, the Waiver Review Division considered a range of facts relevant to assessing program, policy, and foreign relations interests in your case: . . . a)  The citizens of Pakistan would greatly benefit from your extensive training.  Your failure to return to fulfill the two-year foreign residence requirement would deny the citizens of Pakistan the opportunity from your acquired training and expertise.[1]

This is a facially invalid rationale for the denial because it does not show that the State Department adhered to its own regulations, in addition to other law that applies to this case, such as 8 U.S.C. § 1182(e), the legislative history, the U.S. Constitution, and treaty law.  It is also unlawful for the State Department to give more weight to the needs of citizens of another country than it did to the interests of U.S. citizens.  This is especially true considering the fact that the U.S. government has a statutory duty to protect U.S. citizen qualifying relatives if such citizens

---

[1]  This decision was issued in <u>Khan v. Kerry</u>, 14-cv-1338 (C.D. Cal. filed Feb. 20, 2014).  <u>Khan v. Kerry</u> involved an ECFMG-sponsored physician from Pakistan.  It involved one, healthy, U.S. citizen child.  The Department of State and USCIS immediately acquiesced to the grant of the waiver and the suit was voluntarily dismissed shortly thereafter.

–14–

would face exceptional hardship.  It is expected that a similar decision will be issued in Dr. Alabbady's case.

77.     There is no administrative appeal from the future USCIS denial.

78.     The plaintiffs have exhausted their administrative remedies.

79.     The February 24, 2017, recommendation by the State Department is irrational and contrary to the statutory standards of the APA and the Immigration and Nationality Act, the Department of Homeland Security and State Department regulations, the intent of Congress in enacting the J-1 visa waiver, and to the due process of law—in that it fails to state any basis for the denial, or discuss any facts relevant to the decision, or demonstrate that it balanced the exceptional hardships with the program, policy, and foreign relations aspects of this case.

80.     Dr. Alabbady's waiver application is meritorious and should be approved.

### V.  Irreparable Injury

81.     Absent approval of Dr. Alabbady's waiver application, Plaintiffs will suffer irreparable injury and many severe and exceptional hardships.

82.     U.S. citizen Plaintiff Ms. Hassen will be particularly susceptible to exceptional psychological hardship for several reasons.  She is the mother of a one-year-old U.S. citizen son, A. A.  She will fear for her husband's safety in Egypt.  Egypt is a country where Dr. Alabbady will face an exceptionally high risk of physical harm.  While such hardships are not supposed to count in this kind of application, it is indisputable that severe harm to the husband/parent would subject his U.S. citizen wife and U.S. citizen child to a lifetime of psychological hardships.

83.     Ms. Hassen will also face exceptional psychological hardships because she is presently caring for her U.S. citizen mother, who was diagnosed with dementia.  Ms. Hassen's

mother resides with the family and Dr. Alabbady provides supplemental medical care to her as a physician. Ms. Hassen relies on his presence for help. Further, she relies on Dr. Alabbady's income to help with household expenses. Thus, it will be psychologically devastating for Ms. Hassen if she had to care for her ill mother and young son in the absence of her husband.

84.     Ms. Hassen is already so overwhelmed by all of this stress, she has sought therapy and was recently diagnosed with general anxiety disorder.

85.     Ms. Hassen's mother, Selma Hassen, has been diagnosed with dementia, generalized anxiety disorder, and depressive disorder. As set forth above, her care will be disrupted if the applicant is forced to fulfill his two-year foreign residence requirement. Note that the USCIS and the State Department routinely give favorable weight to hardships to other persons such as extended family members. See Matter of Kawasaki, 12 I. & N. Dec. 864 (Dep. Assoc. Comm'r 1968).

86.     Ms. Hassen just accepted a job from Geisinger medical group in healthcare economics and evaluation. Her ability to do well in her new position will be severely disrupted by a forced departure of Dr. Alabbady for two years. This is true because she will be left to take care of a young child and ill mother by herself.

87.     Dr. Alabbady's family will face exceptional financial hardships with the denial of the waiver application. The couple will have exceptional difficulty maintaining a household in the United States and a household abroad. This is compounded by the fact that Ms. Hassen just started a new job at a low salary. She will have great difficulty financially taking care of a young child and an elderly mother with dementia.

–16–

88.     It will be an exceptional hardship to the public interest of the United States if Dr. Alabbady is compelled to return to Egypt to fulfill the two-year foreign residence requirement. Dr. Alabbady's area of internal medicine is a specialty in short supply in the United States. Denial of a waiver will cause harm to many U.S. citizens and will harm the U.S. public interest.

89.     The above hardships will all exist under the main travel alternative in which Ms. Hassen and A. A. remain in the United States while Dr. Alabbady returns to Egypt by himself to fulfill the two-year foreign residence requirement.  The hardships to the family will be even more serious under the remaining travel alternative where the entire family relocates to Egypt.

## COUNT ONE:  ABUSE OF DISCRETION
## AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

90.     Paragraphs 1 through 89 above are repeated and realleged as though fully set forth herein.

91.     The Defendants' denial of Dr. Alabbady's I-612 waiver application is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress, and it is therefore arbitrary and capricious, because the Defendants failed to consider all the evidence in the record before rendering a decision; ignored substantial evidence in the record without any rational basis; failed to weigh the evidence presented against the program, policy, and foreign relations aspects; and/or failed to state a valid reason for the denial.

92.     The Defendants' adjudication of the I-612 waiver application is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress because there is no evidence that the Defendants reviewed the program, policy, and foreign relations

aspects of this case, and the Defendants routinely fail to provide any valid explanation for their recommendations in such cases.

93.     On information and belief, the State Department intentionally does not provide the basis for its decisions in J-1 waiver cases so that it can evade judicial review.

94.     The Defendants acted outside the scope of discretion granted by Congress.

95.     The Defendants' denial of the application therefore violates the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 702, and 706(1), and otherwise constitutes abuse of discretion.

## COUNT TWO:  DUE PROCESS VIOLATION (RIGHT TO LIFE)

96.     Paragraphs 1 through 95 above are repeated and realleged as though fully set forth herein.

97.     The Plaintiffs have a fundamental right to life.

98.     The Defendants' denial of Dr. Alabbady's waiver application threatens his life because if he is forced to return to Egypt, he may be killed or severely injured by the ongoing violence in that country.  The death or serious injury of Dr. Alabbady would subject Ms. Hassen and A. A. to a lifetime of misery and psychological hardships.

99.     The Defendants' denial of Dr. Alabbady's waiver application violates his family's right to due process of law under the Fifth Amendment to the United States Constitution.

## COUNT THREE:  DUE PROCESS VIOLATION (RIGHT TO FAMILY UNITY)

100.     Paragraphs 1 through 99 above are repeated and realleged as though fully set forth herein.

–18–

101.    Dina Hassen and A. A. have a fundamental right to family unity with Dr. Alabbady.

102.    Dina Hassen and A. A. have a fundamental right to reside in the United States because they are both U.S. citizens.

103.    In J-1 exceptional hardship waiver application cases, the USCIS and the WRD apply a multi-pronged hardship waiver analysis that examines whether sufficient hardship exists under all travel alternatives.

104.    Reviewing the hardships in all travel alternatives ignores the fundamental rights of U.S. citizens to remain in the United States and the fundamental right to family unity.

105.    The Defendants' actions in this case violated Dina Hassen and A. A.'s fundamental rights under the United States Constitution.

### COUNT FOUR:  DUE PROCESS VIOLATION (PROPERTY INTEREST)

106.    Paragraphs 1 through 105 above are repeated and realleged as though fully set forth herein.

107.    Dr. Alabbady has a property interest in the application fee that he paid to the State Department.

108.    The Defendants' denial of Dr. Alabbady's waiver application without any rational basis violates the Plaintiffs' right to due process of law under the Fifth Amendment to the United States Constitution.

## COUNT FIVE:  FAILURE TO FOLLOW MORE RELAXED ADJUDICATION STANDARD INTENDED BY CONGRESS

109.    Paragraphs 1 through 108 above are repeated and realleged as though fully set forth herein.

110.    Congress has suggested that a more relaxed attitude should be taken in determining whether a waiver should be granted in a case like Dr. Alabbady's.  See House Report 721, Subcommittee of the House Committee on the Judiciary, 87 Cong., 1st Sess. (1961), at 122.  See also Matter of Duchneski, 11 I. & N. Dec. 583 (Dist. Dir. 1966) (waiver recommended for approval by State Department) and Matter of Coffman, 13 I. & N. Dec. 206 (Dep. Assoc. Comm'r 1969) (waiver recommended by State Department).

111.    Based on congressional intent, and program, policy, and foreign relations considerations, Dr. Alabbady's case should have been reviewed under the relaxed standard, because the applicant came to the United States in J-1 status not only to gain but also to impart his already acquired knowledge, heritage, and culture, a duty which he faithfully and successfully performed.

112.    The Defendants' denial of Dr. Alabbady's I-612 waiver application is contrary to the law and an abuse of discretion because the Defendants failed to apply the more relaxed standard of review to his case.

## COUNT SIX:  FAILURE TO PROVIDE REASONED ANALYSIS DESCRIBING A MARKED CHANGE IN POLICY IN THE ADJUDICATION OF ECFMG-SPONSORED I-612 HARDSHIP WAIVER CASES

113.    Paragraphs 1 through 112 above are repeated and realleged as though fully set forth herein.

114.    Courts have held that an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed.  See, e.g., Pennsylvania v. Service Transp. Bd., 290 F.3d 522, 535 (3rd Cir. 2002).

115.    Out of all ECFMG-sponsored J-1 hardship cases filed by this law firm, where the USCIS recommended the case for approval, not one case received a Not Favorable recommendation from the State Department between approximately 2000 and 2011.  In the first quarter of 2012, three ECFMG-sponsored cases received Not Favorable recommendations without any explanation.  Between that quarter and the first quarter of 2014, the firm received zero Not Favorable recommendations on ECFMG-sponsored cases.  In the first quarter of 2014, the firm then received the ECFMG denial in the Khan v. Kerry case, where the explanation was that the State Department did not want to deprive Pakistani nationals of the training received by the applicant.  The State Department put the lives of Pakistani nationals ahead of the life and well-being of a U.S. citizen child.  Again, the State Department immediately acquiesced to the grant of the waiver after suit had been filed.  From the first quarter of 2014 to the first quarter of 2017, the firm received zero Not Favorable recommendations in ECFMG-sponsored cases.  To date in this first quarter of 2017, the firm has received four Not Favorable recommendations. None of these four Not Favorable recommendations in 2017 had any explanation for the erratic change in policy.

116.    The Defendants' denial of Dr. Alabbady's waiver application without explaining the change in policy and standards violates federal decisional law that mandates such explanations.

## COUNT SEVEN:  VIOLATION OF TREATY

117.    Paragraphs 1 through 116 above are repeated and realleged as though fully set forth herein.

118.    Ratified treaties constitute the supreme law of the land under Article VI of the United States Constitution.

119.    President Jimmy Carter signed the International Covenant on Civil and Political Rights ("I.C.C.P.R.") on October 5, 1977.  On June 8, 1992, the I.C.C.P.R. was ratified by the United States Senate pursuant to Article II, Section 2 of the United States Constitution.  The United States is therefore a party to the I.C.C.P.R.

120.    The Defendants have a duty to adhere to the I.C.C.P.R. when adjudicating waiver applications.

121.    The Defendants' action in denying Dr. Alabbady's I-612 waiver application without any rational basis violates the United States' obligations under various articles of the I.C.C.P.R.  In particular, it violates Articles 1, 12, 17, 23, and 24, in addition to possible violations of other articles.

## COUNT EIGHT:  DECLARATORY JUDGMENT

122.    Paragraphs 1 through 121 above are repeated and realleged as though fully set forth herein.

123.    This Court has authority to issue a declaratory judgment regarding the rights, privileges, and duties of the parties under 28 U.S.C. § 2201.

–22–

124.    This Court should issue a declaratory judgment establishing that Dr. Alabbady is eligible for a J-1 waiver and that due to the exceptional hardships that will be suffered by his U.S. citizen wife and child, he is entitled to a waiver.

125.    This Court should declare that the Defendants' adjudication of waiver applications without properly reviewing the program, policy, and foreign relations aspects of the case, and without stating a valid reason for the Not Favorable recommendation, is contrary to the statutory standards, regulations, legislative history, congressional intent, and due process of law.

126.    This Court should declare that if the WRD issues a Favorable recommendation, the USCIS is required by law, under 8 U.S.C. § 1182(e), to grant the waiver application.

127.    This Court should declare that the denial of Dr. Alabbady's waiver application violates his family's right to due process of law under the Fifth Amendment to the United States Constitution.

128.    This Court should declare that Dina Hassen and A. A. have a fundamental right to family unity with Dr. Alabbady.

129.    This Court should declare that Dina Hassen and A.A. have a fundamental right to reside in the United States because they are U.S. citizens.

130.    This Court should declare that the USCIS and WRD policy of examining all travel alternatives violates the fundamental right to family unity and the fundamental right of U.S. citizens to reside in the United States.

131.    This Court should declare that the Defendants' actions in this case violated Dina Hassen and A. A.'s rights under the United States Constitution.

132.   This Court should declare that Dr. Alabbady has a property interest in the application fee that he paid to the State Department.

133.   This Court should declare that the Defendants' denial of Dr. Alabbady's waiver application without any rational basis violates the Plaintiffs' right to due process of law under the Fifth Amendment to the United States Constitution.

134.   This Court should declare that Congress suggested that a more relaxed standard be applied in a waiver case like Dr. Alabbady's.

135.   This Court should declare that Dr. Alabbady's case should be reviewed under the relaxed standard suggested by Congress, which has historically been followed by the Defendants.

136.   This Court should declare that the State Department has a duty to explain its change in policy and standards with respect to the adjudication of J-1 hardship cases where ECFMG is the sponsor.

137.   This Court should declare that the Defendants have a duty to adhere to the I.C.C.P.R. when adjudicating waiver applications.

138.   This Court should declare that the Defendants' denial of the I-612 hardship waiver application violates various articles of the I.C.C.P.R.

139.   This Court should declare that the United States Government has a statutory duty under 8 U.S.C. § 1182(e) to protect the lives of U.S. citizen qualifying relatives if it is proven that such a relative would face exceptional hardship.

140.   This Court should declare that the United States Government, in balancing "program, policy, and foreign relations" in J-1 waiver cases, may not give more weight to the

–24–

putative interests of citizens of foreign countries than it does to the life and security of U.S. citizen qualifying relatives.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A.  Declare the Defendants' adjudication of Dr. Alabbady's I-612 waiver application to be in violation of the statute, regulations, legislative intent, agency procedures, treaty law, and the Constitution;

B.  Declare that Dr. Alabbady is statutorily eligible for a waiver under 8 U.S.C. § 1182(e);

C.  Declare that the Defendants' denial of Dr. Alabbady's waiver application was unlawful, arbitrary and capricious, contrary to the statute, regulations, legislative history, congressional intent, and in violation of the Constitution, the I.C.C.P.R., and customary international law;

D.  Declare that Dr. Alabbady's waiver application is meritorious and should be approved;

E.  Order the Defendants to approve the waiver;

F.  Grant an award of attorneys' fees and costs; and

G.  Grant such other relief as the Court may deem just and proper.

Dated: March 16, 2017

/s/ Brian C. Schmitt
BRIAN C. SCHMITT*
Hake & Schmitt
P.O. Box 540 (419 Main St.)
New Windsor, Maryland  21776
(410) 635-3337
brian@hake.com

* Admission *pro hac vice* anticipated